[Cite as *State v. McIntosh*, 2018-Ohio-5343.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :          Case No.   17CA14

    vs.                                    :

ANTONIO MCINTOSH,                  :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

Samuel H. Shamansky, Donald L. Regensburger, and Colin E. Peters, Columbus, Ohio, for Appellant.[1]

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Gallia County Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

_____

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-17-18
ABELE, J.

{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. A jury found Antonio McIntosh, defendant below and appellant herein, guilty of nine drug-related offenses and engaging in a pattern of corrupt activity. The trial court sentenced appellant to serve thirty-three years in prison. Appellant assigns the following errors for review:

---

[1] Different counsel represented appellant during the trial court proceedings.

FIRST ASSIGNMENT OF ERROR:

"THE INTRODUCTION OF UNFAIRLY PREJUDICIAL HEARSAY STATEMENTS DURING APPELLANT'S TRIAL VIOLATED HIS RIGHT TO CONFRONTATION AND DUE PROCESS AS GUARANTEED BY THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND WAS CONTRARY TO THE OHIO RULES OF EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S FAILURE TO PROPERLY INSTRUCT THE JURY AS TO CIRCUMSTANTIAL EVIDENCE AND THE BURDEN OF PROOF CONSTITUTED PLAIN ERROR, PREJUDICED APPELLANT, AND VIOLATED HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT FAILED TO MERGE APPELLANT'S CONVICTIONS DESPITE THE FACT THAT THEY WERE ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF BOTH OHIO LAW AND HIS RIGHT AGAINST DOUBLE JEOPARDY AS GUARANTEED BY THE UNITED STATES CONSTITUTION."

FIFTH ASSIGNMENT OF ERROR:

"THE SENTENCE IMPOSED BY THE TRIAL COURT WAS CRUEL AND UNUSUAL, IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION."

{¶ 2} In the fall of 2015 through the spring of 2016, law enforcement officials conducted an investigation into reported drug activity at a Gallia County pool hall. As a result of their investigation, officers executed search warrants at multiple locations throughout Gallia County, including the pool hall and an adjacent property. Shortly thereafter, a Gallia County grand jury returned an indictment that charged appellant with multiple drug-related offenses and with engaging in a pattern of corrupt activity.[2] Appellant entered not guilty pleas.

{¶ 3} At trial, a confidential informant, Joshua Edwards, testified that on two dates in September 2015, he made controlled buys at the pool hall. Edwards described the procedure he followed during the controlled buys and stated that he learned the procedure during a prior uncontrolled buy. Edwards explained that when he entered the pool hall, he placed $40 in a "football bowl." Edwards stated that an unknown person had "told [Edwards] that that's where

---

[2] After subsequent amendments, appellant faced the following charges:

Count one: trafficking in cocaine (less than 5 grams), in violation of R.C. 2925.03(A)(1), a fifth-degree felony.
Count two: complicity to trafficking in cocaine (.25 grams), in violation of R.C. 2925.03(A)(1), a fifth-degree felony.
Count three: possession of cocaine (.25 grams), in violation of R.C. 2925.11(A), a fifth-degree felony.
Count four: possession of cocaine (35.26 grams), in violation of R.C. 2925.11(A), a first-degree felony.
Count five: possession of heroin (25.24 grams), in violation of R.C. 2925.11(A), a second-degree felony.
Count six: aggravated possession of drugs (10.44 grams), in violation of R.C. 2925.11(A), a third-degree felony.
Count seven: trafficking in cocaine (35.26 grams), in violation of R.C. 2925.03(A)(1), a first-degree felony.
Count eight: trafficking in heroin (25.24 grams), in violation of R.C. 2925.03(A)(1), a second-degree felony.
Count nine: aggravated trafficking in drugs (10.44 grams), in violation of R.C. 2925.03(A)(1), a third-degree felony.
Count ten: engaging in a pattern of corrupt activity, in violation of 2923.32(A)(1), a first-degree felony.

[the money] needed to be placed the first time [Edwards] ever bought."   Edwards indicated that after he placed the money in the bowl, someone removed the money, left the room to retrieve the drugs, returned to the room, and then placed the drugs on a speaker located inside the pool hall. Edwards explained:   "I'd place the money in the bowl, the money would be taken out of it. They [sic] would be an individual run to the backroom or outside and grab it, they'd come back in, weigh it up and throw it on the speaker."   Edwards stated that he did not actually receive the drugs from a person's hand, but rather, someone would place the drugs on a speaker located in the pool hall, and Edwards would then retrieve the drugs from the speaker.   Edwards testified that during both of the controlled buys, appellant (aka "TO") and "Stan" were present.   He further related that a female always was present and that the female sometimes removed the money from the bowl.   Edwards stated that he decided to report the information to the drug task force in the hopes of helping his mother avoid a felony drug offense.

{¶ 4} Edwards further testified that on September 10, 2015, he engaged in a controlled buy at the pool hall.   Edwards explained that when he arrived, appellant offered to pay Edwards "three fifty" to    "[c]lean[] out a house."   Edwards indicated that the payment would be in "[c]rack, drugs."   Edwards returned to the pool hall the next day to "make a controlled buy," and explained the circumstances surrounding the controlled buy as follows:   Edwards placed the money in the bowl and "the woman working behind the desk at the counter had grabbed the money out and reached it to [appellant]."   Edwards related that "Stan" then "went in the backroom, weighed out the dope, whatever he done back there, had got it, whatever, brought it

out to the speaker and dropped it off." Edwards stated that after Stan placed the drugs on the speaker, Edwards "went to the speaker and picked it up and left."

{¶ 5} Edwards indicated that the same series of events occurred during his previous buy on September 10, 2015. Edwards testified that he made seven to eight controlled buys in total, and never deviated from the procedure. He explained: "there's wasn't no way to [sic]." Edwards stated that if he did not place the money in the bowl, he could not get drugs.

{¶ 6} Edwards additionally stated that he had followed the same procedure to purchase drugs outside of the controlled buys, and that appellant was present almost every time. The prosecutor asked Edwards if appellant took the money on the other occasions that Edwards had bought drugs at the pool hall, and Edwards responded: "No, that was just an accidental, them two [sic] incidents. * * * * He just happened to take it[;], I don't know why. I never seen [sic] him do it before." Edwards related that although he only purchased "crack," "[t]hey" also sold heroin and methamphetamine.

{¶ 7} Edwards testified that shortly after the last controlled buy, he returned to the pool hall to purchase drugs. Appellant, however, told Edwards "it wasn't that kind of party." Edwards explained that appellant appeared to have become suspicious of Edwards working as a confidential informant. Edwards stated that during a prior visit, appellant had ordered Stan to pat down Edwards and found a cell phone. Edwards stated that the next time he returned to the pool hall, he placed $1000 in the bowl, but when he "looked over to say what [he] wanted or motioned what [he] wanted, there was just a bunch of looks." Edwards explained: "Stan looking back at uh, or [appellant] looked at Stan, Stan looked at [an unidentified female] and she

had told me to take my money back out the bowl." Edwards stated at that point, appellant told Edwards it was "not that kind of party."

{¶ 8} On cross-examination, Edwards stated that of the approximately seven controlled buys he conducted, appellant twice received money either by removing it from the bowl or by someone else handing appellant the money. Edwards explained that appellant never retrieved the drugs, but instead, Stan "always went and got" the drugs.

{¶ 9} Gallipolis Police Detective Sergeant Justin Rice testified that he debriefed Edwards after the two controlled buys at the pool hall. Rice stated that after the September 10, 2015 buy, Edwards stated that he had placed $100 "in the football bowl on the bar, which was a common, the common way to do that and um, Stan Helms went outside to get the product, came back inside placed the product on the speaker and [appellant] had placed the money in his pocket." Rice stated that the following day, Edwards made another controlled buy and the same events occurred. Rice explained that Edwards indicated that appellant placed the money in appellant's pocket.

{¶ 10} Sergeant Rice related that, after a lengthy investigation into drug activity, law enforcement officers executed multiple search warrants, including against property that Stan Helms and a female occupied. That search uncovered four guns, a small amount of marijuana, two sets of digital scales, and a little over $200.

{¶ 11} Sergeant Rice also assisted in a search of appellant's residence. Rice stated that officers had received information that Stan Helms was selling drugs out of the pool hall and that appellant "was basically running the show." Rice testified that officers searched outside

appellant's residence, because "agents had received information that [appellant] was hiding his drugs outside of the residence uh, somewhere between the residence and the pool hall." Rice explained that appellant's residence is approximately 100 yards from the pool hall and that officers located drugs four to five yards from appellant's residence in a rolled up sock underneath "some brush."

{¶ 12} Gallia-Meigs County Major Crimes Task Force Agent Seth Argabright testified that after he searched the pool hall, he discovered paraphernalia and a ceramic bowl that looked like a football. Argabright additionally indicated that officers searched appellant's residence, as well as the exterior because they had "been given intelligence by Heather Nicole Gibson who was present upon execution of the search warrant at 249 State Route 7 North that [appellant] is not known to keep any illegal narcotics or illegal drugs of any kind inside either of the structures." At this juncture, appellant's counsel objected on the basis of hearsay. The prosecutor argued, however, that the statement was being "[o]ffered in to further his investigation, what places the officers in the field outside and searching all in between." The court stated that it would "allow it with that limited use," but gave no limiting instruction.

{¶ 13} Agent Argabright testified that the search of appellant's residence uncovered a little more than $2,000, prepaid debit cards, and cell phones. He further stated that outside appellant's residence, officers discovered "[t]hree tied off plastic bags containing a tan and white substance" stuffed inside a sock. Subsequent testing showed the substances to be 35.26 grams of cocaine, 25.24 grams of heroin, and 10.44 grams of methamphetamine.

{¶ 14} Gallia-Meigs Major Crimes Task Force Agent Frank Stewart testified that the task force "had received intel" that appellant "had taken over a business" at the pool hall and "the

drug business that was being ran out of there."   Stewart related that, after Edwards approached the task force and agreed to act as a confidential informant, Edwards made "multiple purchases of one gram of cocaine from [appellant]" on September 10 and 11, 2015.

{¶ 15} Agent Stewart also explained that when the officers executed the search warrants, he passed by the SWAT officers who were walking appellant to the cruiser.   Stewart related that he heard appellant state, unsolicited, "you all will never find it."   Stewart could not explain the basis for appellant's comment and he did not notice whether any of the SWAT officers had been talking to appellant.

{¶ 16} Agent Stewart further testified that the officers searched outside appellant's residence after Heather Gibson informed the officers "that [appellant] uh, would be the one to have the drugs if there was any drugs that we didn't locate at 141 Hubbard Avenue and that we would not locate the drugs inside of 141 Hubbard Avenue, that they would be somewhere hidden outside, probably in a wood line between the pool hall and 141 Hubbard Avenue.   She also indicated that it would probably be somewhere close to the alleyway because when he walks home that's the route he typically takes would be the alleyway."   Appellant did not object to this testimony.

{¶ 17} In his defense, appellant presented testimony from Brittany Helms, Stan's wife. Brittany claimed that Stan sold drugs.   She further testified that appellant did not use drugs, but lived with his girlfriend, a drug addict.   Brittany attested that two other drug addicts also had access to appellant's property and claimed that they hid the drugs that the officers located outside appellant's residence.

{¶ 18} After hearing the evidence, the jury found appellant guilty of the ten counts as charged in the amended indictment: (1) R.C. 2925.03(A)(1) trafficking in cocaine in an amount less than five grams (count one); (2) R.C. 2925.03(A)(1) and 2923.03(A)(2) complicity to trafficking in cocaine in an amount less than five grams, (count two); (3) R.C. 2925.11(A) possession of cocaine in an amount less than five grams, (count three); (4) R.C. 2925.11(A) possession of cocaine in an amount equal to or exceeding twenty-seven grams but less than one hundred grams, (count four); (5) R.C. 2925.11(A) possession of heroin in an amount equal to or exceeding ten grams but less than fifty grams (count five); (6) R.C. 2925.11(A) aggravated possession of drugs in an amount equal to or exceeding the bulk amount but less than five times the bulk amount (count six); (7) R.C. 2925.03(A)(2) trafficking in cocaine in an amount equal to or exceeding twenty-seven grams but less than one hundred grams (count seven); (8) R.C. 2925.03(A)(2) trafficking in heroin an amount equal to or exceeding ten grams but less than fifty grams (count eight); (9) R.C. 2925.03(A)(2) aggravated trafficking in drugs in an amount equal to or exceeding the bulk amount but less than five times the bulk amount (count nine); and (10) R.C. 2923.32(A)(1) engaging in a pattern of corrupt activity (count ten).

{¶ 19} At the sentencing hearing, the trial court merged the possession and trafficking offenses that involved the same type and quantity of drug and sentenced appellant to serve the following terms of imprisonment: (1) twelve months on count one; (2) twelve months on count two; (3) eleven years on count seven; (4) eight years on count eight; (5) thirty-six months on count nine; and (6) eleven years on count ten. The court further ordered (1) the sentences imposed for counts seven, eight, nine, and ten to be served consecutively to one another, and (2)

appellant serve the prison terms for counts one and two concurrently to the others, for a total prison term of thirty-three years.   This appeal followed.

I

{¶ 20} In his first assignment of error, appellant asserts that the trial court improperly allowed the state to introduce out-of-court testimonial statements in violation of his Sixth Amendment right to confront witnesses.   In particular, appellant contends that the trial court allowed the state to present Heather Gibson's statements that appellant did not keep any drugs inside his residence, but instead kept drugs outside of the residence.   Appellant asserts that Gibson's statements do not qualify as nonhearsay and that none of the hearsay exceptions apply. Appellant additionally claims that Gibson's statements are testimonial.   Appellant points out that at the time Gibson made the statements, officers were in the process of executing a search warrant at Gibson's residence and had provided her with *Miranda*[3] warnings.   Thus, appellant asserts, the "statements bolstered the State's circumstantial case against Appellant for drugs found adjacent to his property line and for engaging in a pattern of corrupt activity."

{¶ 21} The state responds that any error that the court may have committed concerning Gibson's statements constitutes harmless error.   With alarmingly little analysis, the state contends that the record contains "plenty of evidence pertaining to Appellant's guilt in this case." The state then points to the informant's testimony that appellant committed the fifth-degree felony trafficking offenses, and that four to five yards from appellant's residence law enforcement officers found a sock that contained appellant's DNA and contained more than 50

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

grams of various drugs. Thus, the state claims that the foregoing evidence, even without Gibson's testimony, supports appellant's convictions.

{¶ 22} Appellant responds that the state, by failing to challenge appellant's assertion that Gibson's testimony violated his rights under the Confrontation Clause, essentially concedes the issue. Appellant also disputes the state's claim that the error is harmless. Appellant asserts that the state's case rested largely upon circumstantial evidence, supposition, and innuendo, and that without Gibson's statements, the remaining evidence does not constitute overwhelming proof of appellant's guilt.

A

{¶ 23} Appellate courts review alleged violations of a criminal defendant's confrontation rights under a de novo standard. *State v. Hedges*, 4th Dist. Hocking No. 15CA21, 2016-Ohio-5038, 2016 WL 3919844, ¶¶ 12; *State v. Thompson*, 4th Dist. Washington No. 13CA41, 2014–Ohio–4665, ¶ 11, citing *State v. Smith*, 162 Ohio App.3d 208, 2005–Ohio–3579, 832 N.E.2d 1286 (8th Dist.), and *United States v. Robinson*, (C.A.6, 2004), 389 F.3d 582, 592. In the case at bar, however, appellant did not raise a Confrontation Clause objection before the trial court. Instead, appellant simply asserted that Gibson's statements constituted inadmissible hearsay. Appellant thus raises the Confrontation Clause issue for the first time on appeal.

{¶ 24} Generally a defendant who fails to raise a Confrontation Clause issue during the trial court proceedings forfeits the right to present it for the first time on appeal. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 65; *State v. Louis*, 2016-Ohio-7596, 73 N.E.3d 917 (4th Dist.), ¶ 46; *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150 (4th Dist.), ¶ 74; *see State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, 87 N.E.3d 1203, ¶ 44. Additionally,

an "'[o]bjection on one ground does not preserve other, unmentioned grounds.'" *State v. Hairston*, 2016-Ohio-8495, 79 N.E.3d 1193, ¶ 34 (10th Dist.), quoting State v. Wallace, 10th Dist. Franklin No. 08AP–2, 2008-Ohio-5260, 2008 WL 4518016, ¶ 25.  Thus, objecting to testimony on the basis of hearsay does not generally preserve a Confrontation Clause issue. *State v. Sibole*, 2nd Dist. Clark No. 2017-CA-68, 2018-Ohio-3203, 2018 WL 3814969, ¶ 9; *Hairston* at ¶ 34; *State v. Harris*, 1st Dist. Hamilton No. C-130442, 2014-Ohio-4237, ¶ 14. Consequently, because appellant did not specifically object at trial to the alleged hearsay statements on the basis that they violated his rights under the Confrontation Clause, it can be argued that we may review the claimed violation only for plain error.

{¶ 25} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Crim.R. 52(B) thus permits a court to recognize plain error if the party claiming error establishes (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error is a plain or "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'"  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *accord United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (stating that under plain-error review, defendant typically must establish "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different").  For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration."  *Johnson v. United States*, 520 U.S. 461, 467, 468, 117

S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Henderson v. United States*, 568 U.S. 266, 279, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013); *Barnes*, 94 Ohio St.3d at 27, citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that for error to be plain, it must be obvious error under current law); *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, 2016 WL 764409, ¶ 14. However, even when a defendant demonstrates that a plain error or defect affected his substantial rights, the Ohio Supreme Court has "'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Rogers* at ¶ 23, quoting *Barnes*, 94 Ohio St.3d at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

B

**{¶ 26}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."[4]  In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony'" against him. *Id.* at 51. A testimonial out-of-court statement of a witness who does not appear at trial thus is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), citing *Crawford*, 541 U.S. at 54. However, "[t]he Clause * * * does not bar the use of testimonial statements for purposes other than establishing the truth of the matter

---

[4] The Confrontation Clause of the Sixth Amendment applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)

asserted." *Crawford*, 541 U.S. at 59, fn.9, citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). Therefore, "[i]f testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186. Consequently, a necessary question when evaluating an alleged Confrontation Clause violation is whether the out-of-court statement constitutes hearsay or nonhearsay.

**{¶ 27}** In the case sub judice, we therefore must initially determine whether Gibson's out-of-court statements are hearsay, or nonhearsay. If nonhearsay, we need not consider whether they are also testimonial and, thus, barred under the Confrontation Clause.

C

**{¶ 28}** Under Evid.R. 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Consequently, if a statement is offered for a purpose other than proving the truth of the matter asserted, it is not hearsay and is admissible. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118.

**{¶ 29}** "Law-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *State v. Beasley*, — Ohio St.3d —, 2018-Ohio-493, — N.E.3d —, ¶ 172, citing *McKelton* at ¶ 186. Admissibility of investigatory-step statements is limited, however, due to "'the great potential for abuse and potential confusion to the trial of fact.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 24, quoting *State v. Humphrey*, 10th Dist. Franklin No. 07AP-837,

2008-Ohio-6302, ¶ 11.  In order to prevent abuse and limit potential confusion, "[t]estimony offered to explain police conduct is admissible as nonhearsay only if it satisfies three criteria: (1) 'the conduct to be explained [is] relevant, equivocal, and contemporaneous with the statements,' (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) 'the statements do not connect the accused with the crime charged.'" *McKelton* at ¶ 186, quoting *Ricks* at ¶ 27.  Consequently, an investigatory-step statement "is not permitted if the statement in question 'connect[s] the accused with the crime charged.'"  *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 136, quoting *Ricks* at ¶ 27.

{¶ 30} For example, in *Ricks* the court determined that out-of-court statements ostensibly offered to show an officer's next investigative step constituted inadmissible hearsay when the statements implicated the defendant in the crime charged.  In *Ricks*, a law enforcement officer testified that one of the defendant's acquaintances, and a suspected accomplice, gave the officer statements that led the officer to identify the defendant as an individual suspected of murder. The officer explained that he had learned from another law enforcement agency that the acquaintance and an individual named "Peanut" had been involved in a murder.  The acquaintance gave the officer a description of Peanut and accompanied the officer to Peanut's house.  When they arrived at the defendant's house, the acquaintance stated, "That's Peanut." The officer later showed the acquaintance a photograph of "Peanut," and the acquaintance positively identified him as "Peanut."  Other evidence indicated that "Peanut" was the nickname of the defendant on trial for murder.  The defendant objected to the officer's testimony, and the trial court gave the jury a limiting instruction that the state introduced the statements, not for the

truth of the matters asserted, but instead, to explain the officer's investigatory steps. After the jury found the defendant guilty, he appealed.

{¶ 31} On appeal, the defendant asserted a violation of his right to confront the witness who provided the officer with out-of-court statements that identified the defendant as Peanut. The appellate court disagreed, and the defendant appealed.

{¶ 32} The Ohio Supreme Court determined, however, that the acquaintance's out-of-court statements had the effect of implicating the defendant in the murder. The court noted that some of the officer's testimony did show the reason why he pursued certain investigatory steps, but found that "key parts" of the officer's testimony regarding the acquaintance's statements were "a pretext" for connecting the defendant to the crime. *Id.* at ¶ 29 and ¶ 34. The court further concluded that the statements (emanating from an alleged accomplice in the murder) are "'particularly deserving of cross-examination.'" *Id.* at ¶ 36, quoting *State v. Issa*, 93 Ohio St.3d 49, 60, 752 N.E.2d 904 (2001). The court concluded that the jury likely interpreted the acquaintance's statement identifying Peanut "as a statement identifying who had been [the acquaintance's] accomplice in the murder rather than as evidence to explain why the police had obtained a photograph of [the defendant] to show to other witnesses." *Id.* at ¶ 39. The court thus ruled that the acquaintance's out-of-court statements constituted inadmissible hearsay.

{¶ 33} The Ohio Supreme Court likewise determined in another decision that admitting out-of-court statements that implicated the defendant in the crime charged are not admissible as nonhearsay investigatory-step statements. In *Clinton*, the officer testified that, based upon his

interview with the victim, he identified the defendant as the suspect in the victim's rape. The court determined that because the officer's testimony connected the defendant to the crime charged, the officer's testimony contained inadmissible hearsay. *Clinton* at ¶ 137.

**{¶ 34}** In the case sub judice, it appears that the state attempted to justify admitting into evidence Gibson's out-of-court statements for the nonhearsay purpose of explaining the reasons why law enforcement officers searched the exterior of appellant's residence. Gibson's statements, however, "went beyond the nonhearsay purpose of explaining how officers came to" search the exterior of appellant's residence. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 90. Instead, Gibson's statements, like the statements in *Ricks* and *Clinton*, directly connected appellant with the crimes charged. Gibson's statements informed the officers where appellant hid drugs and directly implicated appellant in drug activity. Gibson's statements, therefore, do not constitute nonhearsay.

**{¶ 35}** Accordingly, we must next consider whether Gibson's statements are testimonial.

D

**{¶ 36}** "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements "are testimonial when the circumstances objectively indicate that there is [not an] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* However, "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry." *Michigan v. Bryant*, 562 U.S. 344, 374, 131 S.Ct. 1143,

179 L.Ed.2d 93 (2011). Instead, the inquiry focuses on whether the primary purpose of the statement was testimonial. *Ohio v. Clark*, — U.S. —, 135 S.Ct. 2174, 2180, 192 L.Ed.2d 306 (2015) (stating that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial"). Thus, "whether an ongoing emergency exists is simply one factor * * * that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." *Bryant*, 562 U.S. at 366.

{¶ 37} When determining whether statements are testimonial or nontestimonial, courts must consider "all of the relevant circumstances." *Id.* at 369. A court that is examining whether the primary purpose of a statement is testimonial or nontestimonial thus may consider "the informality of the situation and the interrogation." *Id.* at 377. A "'formal station-house interrogation,'" for instance, "is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused." *Clark*, 135 S.Ct. at 2180, quoting *Bryant*, 562 U.S. at 377. "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony." *Id.*, quoting *Bryant*, 562 U.S. at 358. If the primary purpose of the statement is not testimonial, then "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 562 U.S. at 359. A court that is evaluating the primary purpose of an out-of-court statement must apply an objective test. *Id.* at 359-360. "We look for the primary purpose that a reasonable person would have ascribed to the statement, taking into

account all of the surrounding circumstances." *Williams v. Illinois*, 567 U.S. 50, 84, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012).

{¶ 38} In the case at bar, our review of the record reveals that Gibson's statements are, in fact, testimonial statements. First, we observe that the state's appellate brief does not challenge appellant's assertion that Gibson's statements are testimonial. Additionally, Gibson made the statements at the time law enforcement officers executed a search warrant against her property, after the officers asked if she was willing to talk to them, and after the officers gave her *Miranda* warnings. Gibson did not provide statements to the law enforcement officers in an effort to quell an ongoing emergency. Rather, she made the statements while the officers investigated various individuals' involvement in a purported drug trafficking enterprise. Under these circumstances, a reasonable person would believe that officers were attempting to obtain statements from Gibson that they could later use at trial.

{¶ 39} Consequently, for the foregoing reasons, we believe that Gibson's out-of-court statements constitute hearsay testimonial statements that the trial court should have excluded, unless Gibson was unavailable and unless appellant previously had an opportunity to cross-examine her. Nothing in the record suggests that appellant had a prior opportunity to cross-examine Gibson. Therefore, the admission of Gibson's statements violated appellant's right to confront the witness against him.

{¶ 40} Next, we must consider whether the Confrontation Clause violation requires us to reverse the trial court's judgment. First, as we stated above, an error occurred. Second, we believe the error is obvious. A review of Agent Argabright's testimony shows that when he obtained Gibson's statement, the officers had been searching her property for evidence of a

crime, had asked Gibson if she would speak with them, and had given her *Miranda* warnings. The agent's testimony reveals that the officers hoped to obtain statements useful in an ongoing investigation. Moreover, the circumstances under which Gibson made her statements would have led a reasonable person to believe that the officers were seeking testimonial evidence.

{¶ 41} Additionally, we believe that a reasonable probability exists that, but for the error, the outcome of the proceeding would have been different. Gibson's hearsay statement directly connected appellant to the large quantity of drugs that the officers discovered outside appellant's residence. Without Gibson's statements, the state's evidence that connects appellant to possessing or trafficking in the large quantity of drugs found outside his residence consists of the following: (1) appellant's DNA matched the DNA found on the sock that contained the drugs; (2) the drugs were located four to five yards from appellant's house; (3) officers found slightly more than $2,000 in cash inside appellant's residence; and (4) appellant stated, to no one in particular, "you will never find it." Although we recognize that the jury could have arguably determined that this evidence adduced at trial established that appellant is the person responsible for the drugs found in the sock, we do not find the state's evidence so overwhelming that Gibson's hearsay testimony unlikely influenced the jury's decision. Rather, Gibson's hearsay testimony seems to provide a direct link among the state's evidence that appellant is, in fact, the person responsible for possessing the large quantity of drugs and that he trafficked in those drugs. Consequently, without Gibson's hearsay testimony, we believe that a reasonable probability exists that the jury would have been unable to find appellant guilty, beyond a reasonable doubt, of the possession and trafficking offenses involving the large quantity of drugs located near

appellant's residence. Once again, without Gibson's incriminating statements, the evidence indicates that the drugs were discovered close to appellant's residence, about one block from the pool hall where the alleged drug trafficking occurred. Moreover, the sock in which the drugs had been stuffed contained appellant's DNA. However, the confidential informant's testimony shows that Stan, not appellant, usually left the pool hall to retrieve the drugs. In view of the proximity of the large quantity of drugs to the pool hall and the informant's testimony that Stan retrieved the drugs, if the jury had not heard Gibson's statement, it might have inferred that the drugs belonged to Stan, not to appellant. Although appellant's DNA is present on the sock, the DNA evidence, by itself, does not overwhelmingly establish that appellant is the individual that stuffed the drugs inside the sock, had control over the drugs inside the sock, or that appellant had trafficked in those drugs. Instead, the DNA evidence shows that appellant had been in contact with the sock at some unknown time or point. We therefore do not believe that the DNA evidence is so conclusive as to remove any doubt that Gibson's testimony contributed to appellant's conviction. Instead, Gibson's statements provided a direct link between appellant's DNA and appellant's control over the drugs inside the sock.

{¶ 42} Consequently, we believe that the error that occurred by allowing the officers to testify concerning Gibson's statements affected appellant's substantial rights regarding (1) the possession and trafficking offenses involving the drugs found in the sock, and (2) the engaging in a pattern of corrupt activity. But for the error, a reasonable probability arguably exists that the jury would have found appellant not guilty of those offenses. We do not, however, believe that a reasonable probability exists that, but for Gibson's statements, the outcome of the proceedings regarding the fifth-degree felony trafficking and complicity to trafficking offenses would have

been different. Gibson's hearsay testimony directly implicated appellant in stashing a large quantity of drugs in a sock – drugs that the state argued showed appellant's participation in a large drug trafficking ring. Gibson's hearsay testimony did not, however, directly implicate appellant in those particular trafficking offenses that related to the controlled purchases that involved the confidential informant. Instead, those trafficking offenses are based upon the confidential informant's testimony that appellant appeared to be involved in the two controlled purchases the informant made. Thus, admitting Gibson's hearsay testimony does not constitute plain error that affects appellant's substantial rights as it relates to the fifth-degree felony trafficking offenses arising out of the confidential informant's controlled purchases (i.e., counts one and two of the amended indictment).

{¶ 43} Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error and reverse the trial court's judgment as it pertains to counts four through ten. On remand, appellant is entitled to a new trial, free of the Confrontation Clause violation identified herein. Additionally, we (1) vacate the sentences imposed for counts seven, eight, nine, and ten; and (2) overrule appellant's first assignment of error regarding his convictions on counts one and two.

II

{¶ 44} In his second assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. In particular, appellant argues that the weight of the evidence fails to support his convictions for trafficking and complicity to trafficking in cocaine arising out of the September 10 and 11, 2015 controlled buys at the pool hall (counts one and

two).  Appellant claims that the confidential informant provided the only testimony regarding appellant's purported involvement, and that the informant's statements "are innuendo and supposition."  Appellant additionally contends that (1) the record does not contain any evidence to corroborate the informant's statement that appellant received the money that the informant placed into the bowl designated for drug-buys, (2) the informant, an admitted drug addict who purchased drugs outside of the controlled buys, lacks credibility, (3) the informant agreed to cooperate with law enforcement in an attempt to gain leniency for his mother, and (4) laboratory testing of the product the informant purchased during the September 10, 2015 controlled buy did not show the presence of any controlled substance.  Appellant thus contends that the manifest weight of the evidence fails to support his convictions that arose out of the September 10 and 11, 2015 transactions.

{¶ 45} Appellant also argues that the weight of the evidence fails to support the jury's guilty verdicts regarding counts four through ten.  In light of our disposition of appellant's first assignment of error, however, we find this portion of appellant's second assignment of error moot.  App.R. 12(A)(1)(c).  We therefore do not address his second assignment of error to the extent it challenges the jury's guilty verdicts on counts four through ten.

A

{¶ 46} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  A reviewing court must bear in mind, however, that credibility

generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
>       If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 47} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in

evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). If the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). *Accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when ""'the greater amount of credible evidence'"" supports it). A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord Myers* at ¶ 142.

**{¶ 48}** In the case sub judice, as we explain below, we believe that the state presented substantial competent and credible evidence to support appellant's convictions for trafficking and complicity to trafficking in cocaine.

B

**{¶ 49}** R.C. 2925.03(A)(1) sets forth the elements of the offense of trafficking in drugs as charged in the indictment and provides, in relevant part:

> (A) No person shall knowingly do any of the following:
> (1) Sell or offer to sell a controlled substance or a controlled substance analog[.]

{¶ 50} As used in this statute, selling includes delivering, bartering, exchanging, transferring, or gifting. *See* R.C. 2925.01(A) (incorporating R.C. 3719.01 definitions) and 3719.01(AA) (defining "sale"). This definition is broader than the common dictionary definition of "sale." *State v. Adkins*, 80 Ohio App.3d 211, 221, 608 N.E.2d 1152, 1159 (4th Dist.1992); accord Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section 107:2 (3d ed.). "Ohio has adopted a definition of 'sale' of controlled substances that is broad in scope, calculated to include all transfers of controlled substances regardless of the presence or absence of consideration therefor.*" State v. Albritton*, 6th Dist. Wood No. WD–80–48, 1980 WL 351681, *6 (Dec. 26, 1980). Consequently, "[i]n a prosecution for offering to sell a controlled substance, the state is not required to prove that there was a sale or even that the controlled substance existed. A defendant may be convicted, even in the absence of a completed drug sale, if the defendant committed any element of drug trafficking incident to an aborted sale. * * * The term 'offer to sell' includes a person who offers to provide narcotics as a link in the chain of supply, and whether the person intends to act as agent for the seller or buyer is immaterial." Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section 107:2 (3d ed.) (footnotes omitted); *accord State v. Harris*, 89 Ohio App.3d 147, 148–49, 623 N.E.2d 1240, 1241 (8th Dist.1993) (upholding defendant's drug trafficking conviction when she retrieved sock from her person and handed to third person who ultimately delivered to confidential informant sock that contained a controlled substance. "This essentially means that a person who knowingly transfers or offers to transfer narcotics is guilty of selling or offering to sell narcotics within the meaning

of R.C. 2925.03." *State v. Latina*, 13 Ohio App.3d 182, 187, 468 N.E.2d 1139, 1146 (8th Dist.1984).

{¶ 51} "Furthermore, the issue of whether a defendant has knowingly made an offer to sell a controlled substance in any given case must be determined by examining the totality of the circumstances, including 'the dialogue and course of conduct of the accused.'" *State v. Burton*, 2d Dist. Greene No. 94–CA–13, *2 (Mar. 31, 1995), quoting *State v. Patterson*, 69 Ohio St.2d 445, 447, 432 N.E.2d 802 (1982).

{¶ 52} After our review of the evidence in the case sub judice, we believe that substantial competent and credible evidence supports the jury's verdict for the September 10, 2015 trafficking offense. The informant testified that on September 10, 2015 appellant offered to pay him $350 in drugs if the informant helped appellant "clean[] out a house." The informant's testimony thus shows that appellant offered to give the informant drugs in exchange for the informant's help. The informant's testimony if believed, shows that appellant offered to sell drugs to the informant.

{¶ 53} While we recognize appellant's concern that the informant is not a credible witness, we again emphasize that credibility determinations are within the fact finder's province. *See State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, 2009 WL 2963759, ¶¶ 156-157 (disagreeing that defendant's convictions against manifest weight of the evidence when most of "state's lay witnesses were drug users, felons, and jailhouse snitches"). In the case sub judice, the jury heard and considered evidence regarding the informant's past drug use, criminal behavior, and potential motivation to lie in order to help his mother avoid a drug charge. Obviously, the jury was in the best position to weigh the informant's circumstances when it

evaluated the informant's credibility, and we should not second-guess its decision. Even though appellant may believe that the informant is not a credible witness, the jury was free to believe otherwise.

{¶ 54} Consequently, we reject appellant's argument that his drug-trafficking conviction on count one of the indictment is against the manifest weight of the evidence.

C

{¶ 55} R.C. 2923.03(A)(2) sets forth the elements of the offense of complicity as charged in the amended indictment and states as follows:

> No person, acting with the kind of culpability required for the commission
> of an offense, shall do any of the following:
> * * * *
> (2) Aid or abet another in committing the offense;
> * * * *.

{¶ 56} In the case at bar, after our review of the evidence we do not believe that appellant's conviction for complicity to drug trafficking, arising out of the September 11, 2015 controlled purchase, is against the manifest weight of the evidence. Even though the informant did not see appellant physically handle the drugs, the informant testified about the protocol that the informant had to follow to purchase drugs. Moreover, the informant stated that during his last attempted controlled purchase, appellant advised the informant that it was not "that kind of party." While this statement might appear to be innocuous in isolation, the informant explained that appellant's statement implied that the informant would no longer be welcome to purchase drugs at the pool hall due to fear that he was just that - an informant. Given this context, appellant's statement advising the informant that it was not "that kind of party" illustrates

appellant's awareness of drugs sold out of the pool hall and that appellant had authority to direct who could, and who could not, purchase drugs. The totality of the evidence allowed the jury to infer that appellant had been complicit in trafficking in drugs.

{¶ 57} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶ 58} In his third assignment of error, appellant asserts that the trial court gave the jury an incorrect circumstantial evidence instruction. Appellant claims that the trial court relied upon an outdated jury instruction that misstates current law. In particular, appellant contends that the circumstantial evidence instruction incorrectly relied upon *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974), which the Ohio Supreme Court overruled in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 1991.

{¶ 59} We initially note that appellant did not object to the trial court's circumstantial-evidence jury instruction. Crim.R. 30(A) states:

> On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

Thus, a defendant's failure to object to the challenged instruction forfeits all but plain error. *State v. White*, 142 Ohio St.3d 277, 2015–Ohio–492, 29 N.E.3d 939, ¶ 57, citing *State v. Davis*, 127 Ohio St.3d 268, 2010–Ohio–5706, 939 N.E.2d 147, ¶ 24; *State v. Steele*, 138 Ohio St.3d 1, 2013–Ohio–2470, 3 N.E.2d 135, ¶¶ 29–30; *State v. Eafford*, 132 Ohio St.3d 159, 2012–Ohio–2224, 970 N.E.2d 891, ¶ 11; *State v. Bundy*, 2012–Ohio–3934, 974 N.E.2d 139, ¶ 65

(4th Dist.).    We also again note that plain error exists when the error is plain or obvious and when the error "affect[s] substantial rights."    Crim.R. 52(B).    The error affects substantial rights when but for the error, the outcome of the proceeding would have been different.    *White* at ¶ 57. Courts ordinarily should take notice of plain error "with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."    *State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995, ¶ 78.

{¶ 60} In the case sub judice, even though the jury received an outdated circumstantial evidence instruction, we do not believe that the error requires a reversal of the trial court's judgment.    Instead, because appellant did not timely object to the jury instruction, we in the exercise of "the utmost caution," conclude that appellant should not be permitted to take advantage of the error on appeal.    Moreover, as *Jenks* points out, if the jury is properly and adequately instructed as to the standards for reasonable doubt, a special circumstantial evidence instruction is not required.    *Jenks* also informs us that no need exists for circumstantial evidence to be irreconcilable with any theory of innocence.    Additionally, because the jury instructions mirrored the instructions used prior to *Jenks*, any prejudice resulting from the erroneous instruction was, in fact, against the state.    *State v. Smith*, 3rd District Union No. 14-01-28, 2002-Ohio-5051.    Consequently, any error would constitute harmless error as it relates to the appellant and, in view of our disposition of appellant's first and second assignments of error, we cannot state that failing to recognize the jury instruction error would result in a manifest miscarriage of justice.

{¶ 61} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

{¶ 62} For ease of discussion, we combine our review of appellant's fourth and fifth assignments of error.

{¶ 63} In his fourth assignment of error, appellant argues that the trial court erred by failing to merge his drug possession and drug trafficking offenses (counts four through nine) with the engaging in a pattern of corrupt activity offense (count ten). In his fifth assignment of error, appellant argues that the trial court's thirty-three year prison sentence constitutes cruel and unusual punishment. However, in view of our disposition of appellant's first assignment of error, appellant's fourth and fifth assignments of error have been rendered moot. We, therefore, do not address them, and overrule them as moot. App.R. 12(A)(1)(c).

V

{¶ 64} Accordingly, based upon the foregoing reasons, we (1) reverse the trial court's judgment as it relates to counts four through ten and remand for a new trial, (2) vacate the sentences the trial court imposed on counts seven, eight, nine, and ten, and (3) affirm the trial court's judgment of conviction and sentence as it relates to counts one and two.[5]

---

[5]We recognize that the jury found appellant guilty of counts four through ten and that the trial court merged counts four, five, and six, with counts seven, eight, and nine. Thus, although the jury found appellant guilty of all seven counts, the court correctly did not impose sentence on each count. Appellant therefore has not been "convicted" (i.e., found guilty and sentenced) of each count. Appellate courts ordinarily treat any error relating to a merged offense as harmless error so long as error did not occur with respect to the remaining offense. *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) (noting that when defendant received only one sentence for merged kidnapping offenses, "an erroneous verdict on [one of the kidnapping offenses] would be harmless beyond a reasonable doubt" when sufficient evidence supports the other kidnapping offense); *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, 2015 WL 4113316, ¶ 21, citing *State v. Wolff*, 7th Dist. Mahoning No. 07MA166, 2009–Ohio–2897, ¶ 70 ("When a trial court dispatched with a count through merger, any error in the

                                              JUDGMENT AFFIRMED IN PART,
                                              REVERSED IN PART AND CAUSE
                                              REMANDED FOR FURTHER
                                              PROCEEDINGS CONSISTENT WITH
                                              THIS OPINION.
                    JUDGMENT ENTRY

It is ordered that the judgment be affirmed in part, reversed in part, and remanded for further proceedings.   We further order that certain sentences be vacated in part, in accordance with this opinion.   Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.   The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.   If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment & Opinion

                                              For the Court

---

jury's verdict on the merged count is rendered harmless beyond a reasonable doubt.").   In the case at bar, however, appellant's convictions regarding the remaining offenses are not error-free.  We therefore do not believe that the *Powell* harmless-error statement applies in the case sub judice.  *See generally State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222 (1st Dist.), ¶ 75 (determining that when remanding for new trial due to violation of defendant's right to self-representation, double jeopardy principles do not prohibit retrying defendant for offenses that had previously merged).

BY:_____
                          Peter B. Abele, Judge


### NOTICE TO COUNSEL
        Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.