[Cite as *State v. Scott*, 2023-Ohio-4051.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,               :

                                :

      Plaintiff-Appellee,     :     Case No. 22CA13

                                :

      v.                       :

                                :     <u>DECISION AND</u>

AARON K. SCOTT,          :     <u>JUDGMENT ENTRY</u>

                                :

      Defendant-Appellant.    :     **RELEASED 11/3/2023**

_____

APPEARANCES:

Bradley Davis Burbin, Columbus, Ohio, for Appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, Aaron Scott, appeals from the judgment of the Lawrence County Court of Common Pleas convicting him of one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1), and one count of trafficking in marijuana, a fifth-degree felony in violation of R.C. 2925.03(C)(3)(a). On appeal, Scott raises a single assignment of error contending that the trial court erred in denying his Crim.R. 29 motion as to count three, trafficking in marijuana. However, because we find no merit to Scott's sole

assignment of error, it is overruled. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} On January 26, 2022, Aaron Scott was indicted on four felony counts as follows: Count One, murder, an unclassified felony in violation of R.C. 2903.02(A); Count Two, tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1); Count Three, trafficking in marijuana, a fifth-degree felony in violation of R.C. 2925.03(A)(2) and (C)(3)(a); and Count Four, involuntary manslaughter, a first-degree felony in violation of R.C. 2903.04(A). Count Four also included a firearm specification. The charges stemmed from an incident that occurred on December 9, 2021, when Scott arrived at Linessa Bailey's residence in Lawrence County, Ohio, in order to deliver her approximately $80.00 worth of marijuana. Upon arrival at the residence, Scott was met by Anthony Wayne Pemberton and a physical altercation ensued. As a result, Pemberton sustained a gunshot wound to his leg that led to his death.

{¶3} The State nolle prosequied the involuntary manslaughter count of the indictment prior to trial, and the matter proceeded to a jury trial on the murder, trafficking in marijuana, and tampering with evidence charges only. Detective Aaron Bollinger, who was involved in the investigation, testified that just under five grams of marijuana was recovered from the residence of Linessa Bailey after the incident occurred. He testified that both Scott and Bailey referred to the

recovered substance as marijuana during the investigation. He also testified that he is familiar with both the appearance and odor of marijuana based upon encountering it in the course of his duties. He testified that in addition to recovering what he believed to be marijuana from Bailey's residence, he recovered a bong and drug scales. Detective Bollinger stated that on the date in question, Bailey "reeked" of marijuana. When asked why he didn't weigh the substance, he stated that he "was concentrating on some of the more important things being that there was a murder that occurred."

{¶4} Scott testified in his own defense at trial. He testified that Bailey contacted him several times on the date in question asking that he bring her some marijuana. He stated that when he arrived at her house, she walked up to him and he handed her five grams of marijuana. He further testified that she did not pay him because they were interrupted by Anthony Pemberton. When shown the trial exhibit consisting of the substance recovered from Bailey's residence after the incident, Scott stated that he didn't recognize that as the marijuana he had given her because what he had given her had a different "coloring factor," consisted of "buds," and was not "stringy." On cross examination, Scott testified that he delivered to Bailey approximately $80.00 worth of marijuana from his own personal supply.

{¶5} The jury ultimately acquitted Scott on the murder charge, but found him guilty of trafficking in marijuana and tampering with evidence. Scott filed a

post-verdict Crim.R. 29(C) motion for judgment of acquittal 14 days after he was

found guilty, which was ultimately denied by the trial court. During the sentencing

hearing, the trial court addressed Scott's still-pending Crim.R. 29(C) motion and

acknowledged that although the State had failed to introduce any evidence

regarding chemical analysis determining the THC content of the substance at issue,

it believed sufficient evidence supported Scott's conviction, primarily Scott's own

testimony that admitted he had sold Bailey five grams of marijuana. Scott was

thereafter sentenced to four years of community control on each count, to be

served concurrently. It is from that judgment that Scott now brings his appeal,

setting forth a single assignment of error or for our review.

## ASSIGNMENT OF ERROR

I.     THE TRIAL COURT ERRED IN DENYING
       APPELLEE'S [SIC] CRIM.R. 29 MOTION ON COUNT
       III.

### Legal Analysis

{¶6} In his sole assignment of error, Scott contends that the trial court erred

in denying his Crim.R. 29 motion on count three, trafficking in marijuana. More

specifically, he argues that the trial court erred in denying his motion for judgment

of acquittal based upon Crim.R. 29(C), which was made post-verdict based on the

State's failure to introduce sufficient evidence of the charges alleged. In Scott's

view, the issue presented to this Court for review is whether a fifth-degree

marijuana conviction after July 30, 2019, can be sustained in the absence of

evidence of tetrahydrocannabinol (hereinafter "THC") content. The State responds

by arguing that although scientific testing was not completed on the marijuana at

issue confiscated by law enforcement, in addition to testimony by an experienced

detective that the confiscated substance appeared to be marijuana, Scott himself

testified that he used marijuana and had delivered Linessa Bailey $80.00 worth of

marijuana on the date of the incident. Thus, the State argues there is no merit to

Scott's sole assignment of error and that the judgment of the trial court should be

affirmed.

Standard of Review

{¶7} As set forth above, Scott filed a post-judgment Crim.R. 29(C) motion

for judgment of acquittal 14 days after the jury found him guilty of tampering with

evidence and trafficking in marijuana. The motion alleged that the State had failed

to introduce sufficient evidence of the charges alleged and was addressed to his

convictions for both tampering with evidence and trafficking in marijuana. On

appeal, he only challenges the denial of the motion as to his conviction for

trafficking in marijuana.

{¶8} This Court has observed as follows regarding the proper standard of

review of a trial court's denial of a Crim.R. 29(C) motion:

> "The standard for reviewing a post-verdict motion for judgment
> of acquittal made pursuant to Crim.R. 29(C) is identical to the
> standard for reviewing a motion for an acquittal made during a
> trial pursuant to Crim.R. 29(A). *See State v. Metcalf*, 1st Dist.
> Hamilton No. C-950190, 1996 WL 411620, *1 (July 24, 1996);

*see also State v. Misch*, 101 Ohio App.3d 640, 650, 656 N.E.2d 381 (6th Dist. 1995).  On review of a Crim.R. 29(C) post-verdict motion for judgment of acquittal, a court must view the evidence in a light most favorable to the state to determine if reasonable minds could differ as to whether each material element of the crime has been proven beyond a reasonable doubt.  *See State v. Callins*, 1st Dist. Hamilton No. C-930428, 1994 WL 376752, *1 (July 20, 1994), citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus; *but see State v. Wright*, 1st Dist. Hamilton. No. C-080437, 2009-Ohio-5474, 2009 WL 3323337, ¶ 26 (applying the standard used to review a sufficiency-of-the-evidence claim)."

*State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 10, quoting *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 16.

Legal Analysis

{¶9}  Here, Scott is challenging his conviction for trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(a), which provides as follows:

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of trafficking in marihuana. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), (g), or (h) of this section, trafficking in marihuana is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

Marijuana, or "marihuana" as it is spelled in R.C. 3719.01(M), is defined as

follows:

"Marihuana" means all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin. "Marihuana" does not include the mature stalks of the plant, fiber produced from the stalks, oils or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from the mature stalks, fiber, oil or cake, or the sterilized seed of the plant that is incapable of germination. *"Marihuana" does not include "hemp" or a "hemp product" as those terms are defined in section 928.01 of the Revised Code.* (Emphasis added).

{¶10} As stated in the above statute, hemp is now excluded from the

definition of marijuana. Instead, hemp is defined in R.C. 928.01 as follows:

the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or

> not, with a delta-9 tetrahydrocannabinol concentration of not
> more than three-tenths per cent on a dry weight basis.[1]

Not only is hemp excluded from the definition of marijuana, as set forth above, R.C. 2925.03(C)(3)(a) also draws a distinction between marijuana and hashish. Trafficking in marijuana is a separate and distinct crime from trafficking in hashish, which is governed by R.C. 2925.03(A)(2) and (C)(7)(a)-(g).

{¶11} Scott argues on appeal that a marijuana drug trafficking conviction is legally insufficient if no THC content is introduced into evidence, primarily because the "possession and distribution of hemp is legal in Ohio under S.B. 57." He also argues that for drug trafficking convictions involving marijuana, "it must be proven the [appellant] distributed marihuana, and not, the exempted hashish (hemp)." Thus, Scott appears to argue that hemp and hashish are the same substance, which is inaccurate. Although S.B. 57 decriminalized the use and sale of hemp, the use and sale of marijuana and hashish remain illegal.

{¶12} Not only did Detective Bollinger not weigh the substance that was recovered from Bailey's residence, the State concedes that there was no chemical analysis of the substance at issue. However, Detective Bollinger testified at trial that he was familiar with marijuana as a result of his experience in law enforcement and that essentially, he knows marijuana when he sees it. Detective

---

[1] S.B. 57, which became effective on July 30, 2019, decriminalized hemp and resulted in the enactment of R.C. 928.01, which includes the current definition of hemp.

Bollinger's standard for identifying  marijuana is reminiscent of Justice Potter Stewart's standard for identifying obscenity espoused in his concurring opinion in *Jacobellis v. State of Ohio*, 378 U.S. 184, 192, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).  In *Jacobellis*, upon being presented with the question of whether a certain motion picture constituted "obscenity," Justice Stewart stated regarding the definition of "obscenity" that "I know it when I see it, and the motion picture involved in this case is not that." *Id.*  Similarly, Detective Bollinger testified regarding marijuana that he knows it when he sees it, and he concluded the substance was indeed marijuana.

{¶13}  Scott argues that Detective Bollinger's testimony, in the absence of expert testimony as to the chemical analysis and THC content of the substance, is insufficient to support his conviction.  However, not only did Detective Bollinger identify the substance at issue as marijuana, Ms. Bailey, who was the recipient of the substance at issue, also described it as being marijuana.  But most importantly, Scott testified that he used marijuana for medicinal purposes, that he had provided Ms. Bailey with "marijuana" on one prior occasion, and that on the date in question, he had delivered to Miss Bailey $80.00 worth of "marijuana" from his own personal supply.  At no time did Scott testify that the substance he delivered to Miss Bailey on the date in question was legal hemp or anything other than marijuana.  In fact, although he testified that the substance recovered from Bailey's residence that was introduced into evidence at trial was not the "marijuana" he had

given her, he also testified to the quality of the marijuana he personally uses and

had delivered to Miss Bailey.  For instance, on direct examination Scott testified as

follows:

> Q: I'm showing you what's marked as State's Exhibit Number 54.  Can you take a look at what purports to be marijuana, a controlled substance?  Do you see the color, the texture of it?
>
> A: Yes, sir.
>
> Q: Does that look like the marijuana you handed to her?
>
> A: No, sir.
>
> Q: Why doesn't it look like it's the same marijuana?
>
> A: Uhm, because the grade of it is not – not that good, and it doesn't have the same coloring factor, at all.  And it's stringy, and the one I had gave her was more like bud.
>
> Q: Buds?
>
> A: Yes, sir.
>
> Q: So, it does look different?
>
> A: Yes, sir.
>
> Q: And with your hand, can you tell how much marijuana, or whatever that is, how much it is?  By gram?
>
> A: No, sir.  I wouldn't be able to.  I mean, like said, I . . .
>
> Q: Stop.  Let me do it this way.  You agreed to bring her 5 grams?
>
> A: Yes, sir.

\* \* \*

Q:     Show the jury the exactly [sic] handed it to her in the driveway.

A:     Well, when I came up to her, I handed it to her just like this, so it was concealed.

Scott further testified on cross examination as follows:

Q:     This is the marijuana that you talked about on direct examination.  You indicated that you can tell this apart from the marijuana that you sold Ms. Bailey?

A:     Yeah, that's not it.

Q:     Okay, because you mentioned that it had . . . didn't have the same quality that you sell?

A:     No, that I have.  That I smoke myself.

Q:     You mentioned that it has a difference in texture, and a difference in color.  Is that correct?

A:     Yes, sir.  I did.

Q:     You know you're [sic] way around marijuana, don't you?

A:     Because I use it, yes sir.

{¶14}  Thus, Scott testified clearly and at length regarding the quality and grade of the marijuana he uses and he also separately testified that the marijuana he had provided to Miss Bailey was from his personal supply.  Although he claimed at trial that the marijuana recovered from Bailey's residence was not the marijuana he had provided to her, he at no time claimed or testified that what he provided her was legal hemp rather than marijuana.

{¶15}  We conclude that despite the passage of S.B. 57, which draws a distinction based upon THC content when determining whether a substance constitutes illegal marijuana or legal hemp, and despite the fact that the substance at issue herein was not chemically analyzed to determine the THC content, because Scott directly testified that the substance he delivered to Miss Bailey was high quality marijuana and not legal hemp, viewing the evidence in a light most favorable to the State, reasonable minds could not differ as to whether each material element of the crime of trafficking in marijuana was proven beyond a reasonable doubt.  *See State v. Johnson*, 4th Dist. Gallia No. 13CA16, 2014-Ohio-4032, ¶ 41 (holding that a trooper could reasonably rely on a defendant's identification of a drug (hydrocodone) that was recovered from the defendant's purse so long as the evidence at trial had established a foundation for the defendant's opinion, even in the absence of any laboratory testing results); citing *State v. McKee*, 91 Ohio St.3d 292, 297, 2001-Ohio-41, 744 N.E.2d 737 (holding that "the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established").

{¶16}  Thus, while we agree that post passage of S.B. 57 there is a legal distinction between marijuana and hemp, and while we accept that marijuana and hemp are visually indistinguishable from one another and can only be distinguished via chemical analysis that yields a determination of the THC level,

we conclude that the evidence adduced at trial, including Scott's own testimony,

provided sufficient evidence to support his conviction for trafficking in marijuana.

As such, we find no merit to Scott's sole assignment of error.  Accordingly, the

judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Wilkin, J.: Concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**