[Cite as *State v. Coleman*, 2026-Ohio-666.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 24CA11 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| RYAN ONEIL COLEMAN, | : | |
| | : | **RELEASED: 02/19/2026** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Clyde Bennett, II, Cincinnati, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney and Adam J. King, Highland County Assistant Prosecuting Attorney, Hillsboro, Ohio, for appellee.

_____

Wilkin, J.

{¶1} This is an appeal of a Highland County Court of Common Pleas judgment entry in which Ryan Oneil Coleman ("Coleman") was convicted of compelling prostitution, disseminating matter harmful to juveniles, and trafficking in marijuana. On appeal Coleman contends his convictions should be reversed because there is insufficient evidence to support a finding of guilt beyond a reasonable doubt. Second, Coleman asserts that his convictions are against the manifest weight of the evidence. Finally, Coleman argues that the trial court abused its discretion when it permitted the State to introduce prejudicial hearsay. After reviewing the parties' arguments, the record, and the applicable law, we find no merit to the assignments of error and affirm the judgment of the trial court.

BACKGROUND

{¶2} On December 5, 2023, a Highland County grand jury returned an indictment alleging Coleman had committed five separate criminal offenses on October 11, 2023: Count 1, compelling prostitution, in violation of R.C. 2907.21(A)(2)(a), a third-degree felony; Count 2, compelling prostitution, in violation of R.C. 2907.21(A)(3)(b), a third-degree felony, Count 3, disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1), a fifth-degree felony, Count 4, attempted corrupting another with drugs, in violation of R.C. 2923.02 and R.C. 2925.02(A)(4)(a), a fifth-degree felony, and Count 5, trafficking in marijuana, in violation of R.C. 2925.03(A)(1), a fifth-degree felony.

{¶3} A jury trial on all charges was held on June 10 and 11, 2024. At trial, the State presented the testimony of the juvenile and law enforcement officers, Chris Bowen of the Highland County Prosecutor's Office and Highland County Task Force; Sergeant Mark Hamilton, Greenfield Police Department and Kyle Flora, Greenfield Police Department. In addition, the State introduced 155 exhibits, mostly Snapchat "snaps" of a conversation between the juvenile and Coleman which included two videos that Coleman also sent the juvenile through Snapchat.

{¶4} The juvenile testified that he was 17 years old on October 11, 2023. Shortly after midnight on October 11, Coleman (age 34 at the time), who was a friend of the juvenile's on Snapchat, sent the juvenile a snap message. The juvenile began taking pictures of these snaps and videos on another phone to record them. Coleman asked the juvenile his age, and whether he was "straight

or bi." Coleman sent a snap saying in essence that he didn't want to "catch a charge" for "talking to some kid." More than once in the snaps, the juvenile states he is a minor, i.e., 17 years old. Coleman also says to the juvenile, "don't be getting me into trouble."

{¶5} Coleman sent a series of snaps saying he was "down for whatever," that he's "been smoking." The snaps also show Coleman holding up a joint, or "blunt," telling the juvenile to "hit him up" and for the juvenile to text Coleman whenever he is ready. Gradually, the snaps turn to discussions of sexual activity. Coleman says things like, "I'll do that for you," referring to oral sex or masturbation. In the context of the conversation, Coleman also sends the juvenile videos of himself. The sequence of the snaps shows Coleman offering to perform oral sex upon the juvenile, then Coleman shows pictures of marijuana or mentions smoking marijuana in the snaps. In particular, the snap in Exhibit 40 says, "come over." Then the snap in Exhibit 41 says, "Hi/bj," which the juvenile explained meant "high" and 'blow job.'" Coleman also sends a series of provocative snaps, and says to the juvenile, "I ain't seen nothing from you yet," which the juvenile interpreted to mean pictures of himself. Exhibits 60 and 68 are videos in which the juvenile testified that Coleman was masturbating.

{¶6} Several hours later (after school that same day), the juvenile went to school and met with his father, the resource officer, and someone from the Greenfield Police Department. According to plan, the juvenile later went with these individuals to his truck where he sent Coleman a snap. In this second set of snaps, the juvenile held a beer can, which was actually a prop, and also

smoked a cigarette, with his father's permission.  The conversation revolved around the juvenile celebrating his birthday with Coleman.

{¶7} During the second conversation through Snapchat, the juvenile broaches the subject of the conversation the night before, and while there is little talk of any proposed sexual conduct, Coleman several times brings up the issue of him providing marijuana for the pair to smoke and sends pictures of marijuana in various forms.  He also sets up a place to meet the juvenile. The State provided to the jury by exhibit pictures of these snaps and also the two videos Coleman sent to the juvenile.

{¶8} After the juvenile testified, the State called law enforcement regarding its involvement in the case.  Specifically, during Hamilton's testimony, the following exchange took place:

STATE:  Were you so employed on October the 11th of '23.

HAMILTON:  Yes, I was.

STATE:  And on that evening did officers and members of the Highland County Task Force make contact with you about an investigation?

HAMILTON:  Yes, they did.

STATE:  And what did they ask you to do?

HAMILTON:  They asked me to make . . . advised me that Ryan Coleman was going to be driving to Mitchell's Ballpark to meet up with a juvenile to exchange drugs for sex and asked me to . . .

DEFENSE COUNSEL:  I object, Judge.

COURT:  Well, I'm going to overrule because it's not being offered for the truth of the matter asserted, to explain his actions, so limit it to that and keep it brief.

STATE:  Yes.

Hamilton testified that after the second set of snaps, during which the juvenile and Coleman arranged to meet, he pulled Coleman's Dodge Charger over in Greenfield.  When Hamilton asked Coleman if he had anything illegal on him, Coleman stated he had marijuana blunts on him and then reached into his underwear where he retrieved the two blunts.  Also, in Coleman's vehicle, Hamilton found a bag full of personal hygiene products such as lubricant, deodorant, body cream, fragrance mist, some more fragrance, Huggies wipes, lighter, hand sanitizer, muscle salve, Advil, eye drops, and multiple moisturizer sticks.

{¶9} After Hamilton testified, the State called Flora as a witness.  At that time, the defense objected to the following testimony on the basis of hearsay:

> FLORA:  High School Resource Officer, Sergeant Little contacted me and let me know that a fairly older male got a hold of …
>
> DEFENSE COUNSEL:  Objection.
>
> COURT:  Hearsay?
>
> DEFENSE COUNSEL:  Yes, Your Honor.
>
> COURT:  All right.  It['s] going to be overruled because it's only being offered to explain his actions, not for the truth of the matter asserted.  You may answer.
>
> STATE:  Thank you.
>
> FLORA:  I got advised by Sergeant Little that a fairly older male got a hold of a juvenile and was trying to offer him sexual favors.

{¶10} Flora said he met with the juvenile and his father regarding the snaps. He explained that, although he was present when the juvenile initiated the second set of snaps with defendant, he did not tell the juvenile what to say.

{¶11} Flora executed a search warrant at Coleman's home. There, he found marijuana edibles, a grinder, scales, green leafy vegetation that resembled marijuana, and other paraphernalia in Coleman's residence.

{¶12} At the conclusion of the State's case, the defense made a Rule 29 motion, as to Counts 1, 2, and 3. Defense counsel also specifically argued that as to Count 3, the video introduced regarding purported masturbation, was not "obscene" under the definition of Ohio law. As to the compelling prostitution counts, the State responded that particularly Exhibit 41, but also the Snapchat communication taken as a whole and in context, show that Coleman offered to perform oral sex upon the juvenile in exchange for marijuana. Further, as to Count 3, the State argued that the video showing "masturbation" is obscene. Finally, the State generally asserted that it met its burden as to Counts 4 and 5. The trial court considered each count and overruled the motion. The trial proceeded, and Coleman testified on his own behalf.

{¶13} Coleman described his military service, and also said he went to the police academy and worked as a police officer for two different departments. As to the incident in question, Coleman testified that he was under the impression he and the juvenile were going to hang out, smoke a little bit, and possibly have sex. He believed the juvenile would drink and smoke cigarettes while he (Coleman, who had a medical marijuana card) would smoke marijuana.

He stated that Exhibit 44, saying "Hi/bj," meant "handjob/blow job," and it did not mean "I'm going to get you high for a blow job." Coleman insisted that his goal was not to have sex until the juvenile said he was "bricked up," (had an erection). Coleman said he did not intend to compensate the juvenile for sex, or exchange anything with him. Coleman emphatically explained that he did not offer the juvenile marijuana. As to the videos, Coleman claimed he was not masturbating, his penis was not erect, and his penis was never exposed in the videos.

{¶14} After the deliberations, the jury found Coleman guilty of all five counts.

{¶15} On July 18, 2024, the trial court held a sentencing hearing. At the sentencing hearing, the trial merged Counts 1 and 2 with each other and Counts 4 and 5 with each other, Count 3 remained. The State elected to proceed to sentencing on Counts 1 and 5. The trial court therefore sentenced Coleman to 24 months on Count 1, concurrent to 6 months on Count 3, and consecutive to 6 months on Count 5, for an aggregate sentence of 30 months, with jail-time credit. In addition, the trial court required Coleman to register as a Tier II sex offender. From this judgment, Coleman submitted this timely appeal with three assignments of error.

ASSIGNMENTS OF ERROR

I.    THE VERDICTS IN THIS CASE ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE CONSTITUTION OF THE STATE OF OHIO.

II.      THE CONVICTIONS IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.

III.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE STATE OF OHIO TO ELICIT MATERIAL AND PREJUDICIAL HEARSAY FROM WITNESSES.

### First and Second Assignments of Error

{¶16} For ease of analysis, we address Coleman's first and second assignments of error together.  On appeal Coleman contends his convictions should be reversed because there is insufficient evidence to support a finding of guilt beyond a reasonable doubt.  Further, Coleman asserts that his convictions are against the manifest weight of the evidence.  According to Coleman, the State did not prove that he did anything to facilitate the juvenile to engage in sexual activity for hire.  He acknowledges that the State proved that he wanted to have sex with the juvenile but asserts nothing was shown that the sex was "for hire."  Coleman also asserts that the video Coleman sent to the juvenile did not, as a matter of law, meet the legal definition of "obscene," or "harmful to juveniles."  Coleman also contends that there was no evidence that he sold or offered to sell marijuana to the juvenile.  Coleman hypothesizes the jury lost its way because the nature of his sexual orientation and the age gap between him and the juvenile.

{¶17} The State responds that both the snaps and Coleman's conduct afterward show Coleman compelled prostitution by offering to provide the juvenile with marijuana in exchange for sex.  The State observes that Coleman's conduct after the snaps further show Coleman's intentions as he put two blunts in

his underwear, grabbed his bag containing lubricant, and began driving to the location agreed upon by him and the juvenile.  The State asserts that as to Count 3, it introduced two Snapchat videos showing Coleman touching and fondling his penis, Exhibits 60 and 68, and that it is the jury's province to interpret whether the videos were obscene or harmful to juvenile after it was properly instructed by the trial court.  The State acknowledges that Coleman does not expose his penis in the videos.  However, according to the State, one video depicts Coleman touching his penis beneath his underwear, while the other video shows Coleman touching his penis above his underwear.

{¶18}  The State also argues that Coleman committed trafficking in marijuana in the snaps, and specifically points to Exhibit 4, the snap of a marijuana blunt with the words "HMU (hit me up) when you are ready."  The State argues this is an offer to provide marijuana in exchange for a sexual encounter, further evidenced by Coleman's concealing marijuana blunts in his underwear prior to attempting to meet up with the juvenile.

A.  Law

{¶19}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported

by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶20} The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

{¶21} In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

**{¶22}** "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Wickersham*, 2015-Ohio-2756, ¶ 27, (4th Dist.), citing *State v. Pollitt,* 2010-Ohio-2556, ¶ 15 (4th Dist.). A determination that a conviction is not against the manifest weight of the evidence is therefore dispositive of the issue of whether the evidence is sufficient to sustain a conviction. *Id.*, citing *State v. Lombardi,* 2005-Ohio-4942, ¶ 9 (9th Dist.). Therefore, in the instant case*,* we consider Coleman's argument that his convictions are against the manifest weight of the evidence.

## B. Analysis

**{¶23}** We note at the outset that although the jury found Coleman guilty of all counts of the indictment, the trial court merged the first two counts of compelling prostitution and also merged the attempted corrupting another with drugs conviction with the trafficking in marijuana conviction (Counts 4 and 5). As to the merged counts, the State then elected that Coleman be sentenced on Counts 1 and 5. Thus, if sufficient evidence supports Coleman's convictions on Counts 1, 3, and 5, an erroneous verdict on the merged count would be harmless. *State v. Whitehead,* 2022-Ohio-479, ¶ 78 (4th Dist.), citing *State v. Worley*, 2021-Ohio-2207 ¶ 73; *see State v. Williams*, 2012-Ohio-4693, ¶ 54 (4th Dist.) (because court does not impose sentence for merged offenses, defendant is not "convicted" of merged offenses and no "conviction" for appellate court to vacate). Consequently, if we determine that sufficient evidence supports Coleman's convictions for compelling prostitution according to R.C.

2907.21(A)(2)(a), disseminating matter harmful to juveniles according to R.C.

2907.31(A)(1); and trafficking in marijuana according to R.C. 2925.03(A)(1), we

need not to address the other counts of the indictment.  *See Id.*

Compelling Prostitution

**{¶24}**  Coleman was convicted of compelling prostitution in violation of

R.C. 2907.21(A)(2)(a).  R.C. 2907.21(A)(2)(a) provides:  "[n]o person shall

knowingly * * * [i]Induce, procure, encourage, solicit, request, or otherwise

facilitate * * * [a] minor to engage in sexual activity for hire, whether or not the

offender knows the age of the minor".  Whether someone acts knowingly is

defined by R.C. 2901.22(B).  R.C. 2901.22(B) provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*State v. Crumpton,* 2024-Ohio-5064, ¶ 28 (4th Dist.).

**{¶25}**  In the instant case, Coleman primarily challenges whether the State

proved the element of sexual activity *for hire.*  R.C. 2907.21 does not specifically

define "for hire," however, similar statutes clarify its meaning in the context of

"sexual activity for hire."  R.C. 2907.24, the statute prohibiting soliciting, defines

"sexual activity for hire" as "an implicit or explicit agreement to provide sexual

activity in exchange for anything of value paid to the person engaging in such

sexual activity, to any person trafficking that person, or to any person associated

with either such person."  In the instant case, the State alleges that Coleman encouraged or requested the juvenile to allow him to perform oral sex and masturbation upon him in exchange for marijuana.

{¶26}  To set the backdrop of these snaps that Coleman sent on Snapchat, as the State pointed out at trial, Coleman, who was 34 at the time, had some experience in law enforcement.  While the State only has to prove the victim was a juvenile, and not that Coleman knew his age, the State went beyond that and showed that Coleman was well aware that the child was a minor.  As the juvenile explained to the jury at trial, Coleman also used a medium in which Coleman controlled the "evidence" of his text messages, as they would disappear after a short period, except here, the circumstantial evidence showed that Coleman was unaware that the juvenile was taking photographs of these snaps and videos.  Further, on at least two occasions, Coleman made comments to the effect that he was not trying "to pick up a charge."  In these early texts, Coleman also asked the juvenile more than once if the juvenile was straight, homosexual, or bisexual.

{¶27}  At the beginning of the interaction, which Coleman initiated, Coleman held up a marijuana cigarette or "blunt" and told the juvenile to "hit him up."  The juvenile told Coleman he had alcoholic beverages.  Several messages were exchanged then about marijuana.  Coleman invited the juvenile over to his home.  The juvenile then indicated that he had an erection.  Then Coleman texted in a snap to the juvenile to "pull up."  Thereafter, Coleman changed the settings on his Snapchat to require the messages to be deleted immediately.

The next text after that is a snap in which Coleman said he will "help" the juvenile and sent pictures denoting "sperm" in Snapchat parlance.

{¶28} The snaps began to get more and more suggestive, with Coleman sending pictures of the shower, and asking the juvenile if the juvenile is masturbating. Coleman told the juvenile what he would like to do to him. Coleman said, "come over," and then he snapped the letters "Hi/bj" -- "bj" which the juvenile understood to mean "blow job." Right after that text, Coleman sent a picture of a showerhead, and then the following snap was a picture of the ground with the words, "you coming to smoke?" Then Coleman sent several snaps about sexual activity and requested to see the juvenile's penis. Coleman sent several other enticing remarks about sex, followed by videos that, according to the State and the juvenile's testimony, were understood to show Coleman masturbating. After Coleman solicited the juvenile for sexual activity and requested explicit images, he attempted to entice the juvenile by saying, "I've got bud [marijuana]."

{¶29} Several hours later, after the juvenile contacted the authorities, the juvenile again contacted Coleman. During the Snapchat conversation, the two discussed partying and celebrating the juvenile's birthday. Then, Coleman said, "if you want to smoke, pull up." Coleman repeatedly invited the juvenile to party and asked in more than one way if the juvenile was alone and coming over. The juvenile asked several questions trying to get Coleman to say that he wanted to have sex in exchange for money, but, by in large, Coleman avoided the direct questions and just asked the juvenile to come over. During his testimony at trial,

the juvenile summed up the night before as Coleman wishing to give the juvenile a "blow job," and a "handy" or "handjob," but noted the next day Coleman seemed more reserved.

{¶30} At some point, during the end of the chatting, when the law enforcement officers were present, the juvenile texted, "I'm not coming over there just for BJ and shit, I'm trying to get high." Coleman then indicated he's trying to smoke and sends a video with pictures of marijuana and marijuana paraphernalia. Coleman asked to meet, then showed snaps with pictures of his bed and showerhead.

{¶31} After this second exchange of snaps between Coleman and the juvenile, Coleman arranged to meet the juvenile at a nearby park. Law enforcement stopped Coleman's car and Coleman admitted he had two joints in his underwear. He also had several personal hygiene items on him, including lubricant. This is significant because the previous night, when Coleman sent the sexual messages, he sent a snap featuring a circled bottle of lubricant with the words, "I have some lube."

{¶32} Coleman testified at trial and essentially claimed that he was under the impression that he and the juvenile were simply going to hang out, smoke a little, and possibly have sex. Coleman said that the Exhibit 44 text, which says "Hi/bj," meant, "hand job and "blow job," *not* "I'm going to get you high for a blow job. He claimed he didn't even intend to have sex with the juvenile until the juvenile said he was "bricked up" and it was not his intention at any time to compensate the juvenile or exchange anything with the juvenile for sex.

{¶33}  At trial, the defense cross-examined the juvenile and asked him to point to which specific snap showed the "to hire" element of the offense.  The State argued at trial that the text, which referred to "Hi/bj," referred to an exchange that meant, "I'll provide marijuana in exchange for oral sex."  The defense disputed this and said that it simply referred to a "handjob" and "blow job" and that the "Hi" should have been "Hj," it was simply a typo.  It is true that the juvenile stated within his testimony that Coleman did explicitly offer a handjob/blow job.  But focusing on this one text is not the crux of the case.  All of the snaps on both occasions, circumstances behind the snaps, and actions of Coleman later that same date clearly show the elements of the offenses.  The definition of the offense includes an "implicit" agreement and also involves the proffer of exchange of anything of value, i.e., marijuana.

{¶34}  With these facts, the State proved the offense of compelling prostitution beyond a reasonable doubt.  Coleman "encouraged," "solicited," requested," or "otherwise facilitated" the juvenile to engage in sexual activity for hire.  Clearly, Coleman entered into an implicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity, when Coleman implicitly agreed with the juvenile that he would provide marijuana in exchange for oral sex or masturbation.  The State clearly showed his intention to follow through with this agreement when Coleman was on his way to the park with marijuana and other sexually-related hygiene products.

Disseminating Matter Harmful to Juveniles

{¶35}  R.C. 2907.31(A)(1) provides:  "[n]o person, with knowledge of its character or content, shall recklessly do any of the following * * * [d]irectly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles[.]"  On appeal, Coleman particularly challenges whether the videos he sent to the juvenile met the legal definition of "obscene," or "harmful to juveniles."  R.C. 2907.01 provides the definitions of "harmful to juveniles":

> (E) "Harmful to juveniles" means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic abuse in any form to which all of the following apply:
>
> (1) The material or performance, when considered as a whole, appeals to the prurient interest of juveniles in sex.
>
> (2) The material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles.
>
> (3) The material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles.

The statute further provides:

> (F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:
>
> (1) Its dominant appeal is to prurient interest;
>
> (2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way

that tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, *masturbation*, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.  (Emphasis added.)

Here, Coleman argues that the videos did not meet the definitions outlined above either for obscenity or being harmful to juveniles.  The evidence adduced at trial shows that Coleman sent two Snapchat videos (Exhibits 60 and 68) depicting Coleman touching and/or fondling his own penis.  Although Coleman's penis is not exposed in the videos, it is clear that Exhibit 60 shows Coleman reaching inside his underpants and touching his genitals, clearly in an act of masturbation.  Further, Exhibit 68 shows Coleman touching his genitals over the top of his underwear, clearly indicating the act of masturbation.  We agree with the State that the jury, who was properly instructed as to the elements of the offense, was in the best position to determine whether these videos were obscene and/or harmful to the juvenile.  Our review of the videos does not show that the jury clearly lost its way.

Trafficking in Marijuana

**{¶36}** R.C. 2925.03 provides: "(A) No person shall knowingly * * * (1) [s]ell or offer to sell a controlled substance or a controlled substance analog[.]" Further, the State must prove, according to R.C. 2925.03(C)(3)(a), that "the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish." In addition, "[u]nder R.C. 2925.03(I), the definition of drug includes "any substance *that is represented* to be a drug". (Emphasis sic.) *State v. Brown*, 2024-Ohio-1333, ¶ 22 (3d Dist.). A chemical analysis is not necessary if there is testimony from a law enforcement officer familiar with the substance, especially when the evidence establishes, with a proper foundation, that the defendant has also identified the drug. *See State v. Scott,* 2023-Ohio-4051, ¶ 12-15 (4th Dist.) (where no chemical analysis was presented to the jury regarding the identity of the marijuana; however, the detective, who had experience in the field, testified to its identity, and the defendant himself also identified the substance).

**{¶37}** The term "offer" in R.C. 2925.03(A)(1) is not defined by statute. However, the Supreme Court of Ohio has defined the term "offer" to mean " 'to declare one's readiness or willingness' " to sell a controlled substance. *State v. Spivery,* 2023-Ohio-1603, ¶ 8 (12th Dist.), quoting *State v. Scott*, 69 Ohio St.2d 439, 440 (1982), quoting *Webster's New Collegiate Dictionary* (1976). Ohio appellate courts also define the term "offer" to mean " 'to declare one's readiness or willingness to sell a controlled substance or to present a controlled substance for acceptance or rejection.' " *Spivery* at ¶ 8, quoting *State v. Aldrich*, 2008-Ohio-

1362, ¶ 21 (12th Dist). *See also, State v. Nucklos,* 2007-Ohio-1025, ¶ 29 (2d

Dist.); *State v. Cabrales,* 2007-Ohio-857, ¶ 41 (1st Dist.)*; State v. Sheffey,* 2004-

Ohio-2204*, ¶* 13 (11th Dist.)*; State v. Drane,* 1993 WL 306567, *2, 1993 Ohio

App. LEXIS 3259, *6 (6th Dist. June 30, 1993).

**{¶38}** As used in this statute, "selling" includes delivering, bartering,

exchanging, transferring, gifting, or offering.   *See* R.C. 2925.01(A) (incorporating

R.C. 3719.01 definitions) and 3719.01(U) (defining "sale").   *State v. Socie,* 2022-

Ohio-2526, ¶ 42 (6th Dist.); *See also, State v. Markley,* 2021-Ohio-3340, ¶ 47

(5th Dist.), citing *State v. Bradshaw,* 2018-Ohio-1105, ¶ 67 (4th Dist.); *State v.*

*Day,* 2019-Ohio-4816, ¶ 24, n. 4 (4th Dist.); *State v. McIntosh,* 2018-Ohio-5343,

¶ 50 (4th Dist.).   "This definition is broader than the common dictionary definition

of 'sale.' "   *Id.* quoting *Bradshaw* at ¶ 67, citing *State v. Adkins*, 80 Ohio App.3d

211, 221 (4th Dist.1992). " 'Ohio has adopted a definition of 'sale' of controlled

substances that is broad in scope, calculated to include all transfers of controlled

substances regardless of the presence or absence of consideration therefor.' " *Id.*

quoting *Bradshaw* at ¶ 67, citing *State v. Albritton*, 1980 WL 351681, *6 (6th Dist.

Dec. 26, 1980).

> Consequently, "[i]n a prosecution for offering to sell a controlled
> substance, the [S]tate is not required to prove that there was a sale
> or even that the controlled substance existed. A defendant may be
> convicted, even in the absence of a completed drug sale, if the
> defendant committed any element of drug trafficking incident to an
> aborted sale. * * * The term 'offer to sell' includes a person who offers
> to provide narcotics as a link in the chain of supply, and whether the
> person intends to act as agent for the seller or buyer is immaterial."
> Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section
> 107:2 (3d ed.) (footnotes omitted) * * * "This essentially means that
> a person who knowingly transfers or offers to transfer narcotics is
> guilty of selling or offering to sell narcotics within the meaning of R.C.

2925.03." *State v. Latina*, 13 Ohio App.3d 182, 187, 468 N.E.2d 1139, 1146 (8th Dist.1984).

*Bradshaw* at ¶ 67.

{¶39} "[T]he issue of whether a defendant has knowingly made an offer to sell a controlled substance in any given case must be determined by examining the totality of the circumstances, including " 'the dialogue and course of conduct of the accused." ' " *McIntosh* at ¶ 51, quoting *State v. Burton*, 1995 WL 137054, *2 (2d Dist. Mar. 31, 1995), quoting *State v. Patterson*, 69 Ohio St.2d 445, 447 (1982). In addition, in proving its case, the State may rely on either direct or circumstantial evidence. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph one of the syllabus. *State v. Wickersham*, 2015-Ohio-2756, ¶ 39 (4th Dist.); *see also*, *State v. Barnes,* 2020-Ohio-3943, ¶ 23-24 (4th Dist.).

{¶40} In the instant case, the evidence showed that Coleman clearly offered to provide the juvenile with marijuana for barter. Numerous chats, including the one stating "HMU" (hit me up) showed Coleman used marijuana to entice the juvenile to come and smoke marijuana with him. As described above, the evidence appears to show that Coleman used the marijuana as a tool to entice the juvenile to come and allow Coleman to perform sexual acts. Under the facts of this case, it is clear that Coleman was, even at the minimum, offering to "gift" the marijuana to the juvenile while the minor came to use the drugs and have sex. His intentions are even more evident considering that there is more

than one text containing pictures of marijuana, as well as Coleman having the marijuana blunts in his underwear when law enforcement stopped him.

{¶41} Having found the manifest weight clearly supports the evidence, we hereby overrule Coleman's first and second assignments of error as having no merit.

Third Assignment of Error

{¶42} In his third assignment of error, Coleman contends the trial court abused its discretion by admitting two specific instances of hearsay from State witnesses. The State counters that the trial court did not err, because out-of-court statements are properly admissible to explain the actions of a witness to whom the statement was directed.

A. Law

{¶43} In general, " '[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Taylor,* 2025-Ohio-2250, ¶ 70, (4th Dist.), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Thus, " 'we review a trial court's hearsay rulings for an abuse of discretion.' " *Id.,* quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 97. "An abuse of discretion 'is more than a mere error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary or unconscionable.' " *Id.* quoting *State v. Martin*, 2017-Ohio-7556, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶44} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted in the statement." Evid.R. 801(C).  A "statement" is defined as

"(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is

intended by the person as an assertion."  Evid.R. 801(A).  A "declarant" is a

"person who makes a statement."  Evid.R. 801(B).  " "Hearsay is inadmissible

under Evid.R. 802, unless a particular statement fails to meet the two-part

definition of Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior

statements under Evid.R. 801(D)(1) or (2) or falls within one of the recognized

exceptions under Evid.R. 803 or 804.' "  *State v. Jackson,* 2023-Ohio-2193, ¶ 41

(3d Dist.), quoting *State v. Richcreek,* 2011-Ohio-4686, ¶ 22 (6th Dist.).

**{¶45}**  " '[A] statement is, by definition, not hearsay when it is offered for a

purpose other than to prove the truth of the matter asserted."  *Id.* quoting *State v.*

*Armour,* 2022-Ohio-2717, ¶ 38 (3d Dist.).  Thus, "[o]ut-of-court statements that

explain law enforcement officers' next investigatory steps are not generally

hearsay."  *State v. Russell,* 2022-Ohio-1746, ¶ 96 (4th Dist.), citing *State v.*

*Beasley*, 2018-Ohio-493, ¶ 172.  Hence, law enforcement officers may "testify to

out-of-court statements for the nonhearsay purpose of explaining the next

investigatory step."  *Id.*, citing *Beasley* at ¶ 172, citing *State v. McKelton,* 2016-

Ohio-5735, ¶ 186.  Even so, due to " 'the great potential for abuse and potential

confusion to the trial of fact,' " the Supreme Court of Ohio has explained that

such use should be limited.  *Id.; State v. Ricks*, 2013-Ohio-3712, ¶ 24.  To

prevent abuse and limit potential confusion,

> [t]estimony to explain police conduct is admissible as nonhearsay if
> it satisfies three criteria: (1) the conduct to be explained is relevant,
> equivocal, and contemporaneous with the statements, (2) the
> probative value of the statements is not substantially outweighed by

the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged.

*State v. Newcomb,* 2024-Ohio-805, ¶ 50 (4th Dist.), quoting *State v. Beasley*, 2018-Ohio-493, ¶ 172, citing *State v. Ricks*, 2013-Ohio-3712¶ 27.

" 'Consequently, an investigatory-step statement 'is not permitted if the statement in question 'connect[s] the accused with the crime charged." ' " *Russell* at ¶ 96, quoting *State v. Clinton*, 2017-Ohio-9423, ¶ 136, quoting *Ricks* at ¶ 27.

### B.  Analysis

**{¶46}**  The first instance of hearsay to which Coleman objects is Hamilton's statement that "Ryan Coleman was going to be driving to Mitchell's Ballpark to meet up with a juvenile to exchange drugs for sex and asked me to . . . ."  As Coleman points out, the crucial issue involving Coleman's guilt, especially as to Count 1, was whether he planned or attempted to meet with the juvenile to exchange marijuana for sex.  Applying the factors above, we find the statement satisfies the first criterion in that the conduct to be explained is relevant, equivocal, and contemporaneous with the statements.  However, the second and third criteria are more concerning.  Taken the criterion out of order, the third criterion is not met because the statement *does* connect the accused with the crime charged.  As to the second criterion, the statement's probative value is substantially outweighed by the danger of unfair prejudice.  Rather than simply describing the investigative process, Hamilton's statement summarizes the implied offer of sex for hire, directly impacting the key issue the jury must decide on Count 1 of the indictment.  This is somewhat concerning because the element of "for hire" as discussed at length above, constitutes an implicit, rather than

explicit, offer to exchange drugs for sex.  When Coleman objected, the trial court conducted no analysis related to the possible prejudice or confusion to the jury by applying the three essential criteria.  Thus, we find the trial court abused its discretion regarding the admission of this statement.

{¶47}  In addition to Hamilton's inadmissible statement, Coleman also claims as error the admission of Flora's description of the information Sergeant Little provided him that Coleman was offering the juvenile "sexual favors."  Again, like the hearsay testified to by Hamilton, the trial court did not address the three criteria when overruling Coleman's objection, and the statement fails to meet at least two of the criteria – it connected the accused with the crime charged and also was more prejudicial than probative because it arrived at a conclusion of an "offer" of "sexual favors" which is also a crucial element of Count 1 of the indictment.  The trial court also erred in not considering the criteria when finding this statement admissible.  Indeed, whether intentional or not, the testimony could have encouraged the jury, to misuse the content of the out-of-court statements for their truth.  It is further concerning that there was not one statement, but two, regarding these issues.

{¶48}  Nevertheless, even though the hearsay statements were admitted in error, we must determine if the errors were harmless.  Pursuant to Crim.R. 52(A), harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "Where other admissible evidence mirrors improper hearsay, the error in allowing the hearsay is generally deemed harmless, since it would not have changed the outcome of the trial.' "

*State v. Gibbs*, 2024-Ohio-6125, ¶ 47 (5th Dist.), quoting State *v. Williams*, 2017-Ohio-8898, ¶ 17 (1st Dist.).  Therefore, our consideration must be to determine whether their admission was harmless beyond a reasonable doubt in view of other evidence establishing Coleman's guilt.  *State v. Clinton,* 2017-Ohio-9423, ¶ 129.  "In the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt."  *State v. Kidder,* 32 Ohio St. 3d 279, 284 (1987), citing *Harrington v. California,* 395 U.S. 250, 254 (1969); *U.S. v. Hastings,* 461 U.S. 499 (1983); *State v. Williams,* 6 Ohio St.3d 281, 290 (1983).

**{¶49}**  Here, while these two statements constitute the only testimony that specifically stated Coleman made an offer for sex, the numerous exhibits, including snaps and videos, overwhelmingly showed Coleman's guilt.  He repeatedly offered to perform certain sexual acts, using the enticement of marijuana to lure the juvenile to a specific park.  In addition, the circumstantial evidence shows no other conclusion but guilt, including the officers finding Coleman en route to the park, where he had various personal items related to the snaps' texts, pictures, and videos.  Further, circumstantial evidence of knowledge is shown by Coleman's experience in law enforcement, his use of a type of social media wherein his communication was not recordable, etc., which shows his guilt.  The principles behind the three-criteria analysis were not dismantled by the admission of the evidence.  As to the second criterion, the evidence showed a lengthy conversation in which the offer of sex for hire was clear when taken in context.  As to the third criterion, the fact the officers specifically connected

Coleman to the crime, is not as concerning in this case, because there was no question as to the identity of the offender – Coleman at trial acknowledged that he wished to have consensual sex with the juvenile – instead, the issue was whether Coleman's conduct constituted a crime, and he actually "offered" to provide marijuana in exchange for sex, i.e., sex "for hire".

{¶50}  For these reasons, we find that any error by the trial court was harmless.  Thus, we overrule Coleman's third assignment of error.

CONCLUSION

{¶51}  For the foregoing reasons, we overrule the three assignments of error and affirm the trial court's judgment of conviction.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**